UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRISTOPHER HOWARD,

       Plaintiff,

v.

CATHERINE S. BAUMAN et al.,

       Defendants.
_____/

Case No. 2:19-cv-195

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### **Discussion**

#### I.     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI), in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising,

Alger County, Michigan, and led to his transfer to the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan, where Plaintiff was housed at the time he filed his complaint. Plaintiff sues the following LMF officials: Warden Catherine S. Bauman; Assistant Deputy Warden Benny Mercier; Resident Unit Manager/Security Classification Committee (SCC) member J. Naeyaert; and Prison Counselor Patti Hubble.

Plaintiff's complaint is devoid of factual allegations. Instead, he references his 77 pages of exhibits, which largely consist of his many grievances and grievance responses. In the middle of his attachments, however, Plaintiff has included a three-page affidavit. (Pl.'s Aff., ECF No. 1-1, PageID.44-46.) The Court draws its facts from Plaintiff's affidavit and his own statements in his grievances.

Plaintiff transferred in to LMF on September 26, 2018. When he arrived, he was placed in a cell specified for dog handlers. Dogs were present in the unit. Plaintiff told Defendant Hubble that he feared being placed in a cell with a dog, and he asked to be relocated. Defendant Hubble advised Plaintiff that they did not move prisoners within the unit, that he should not worry about the dogs, and that he should be grateful to be in a Level-2 housing unit, because, if he accumulated a few more misconduct tickets, he would find himself housed at Level 4.

On September 28, 2019, as he was exiting his cell, Plaintiff was bitten by an LMF dog. Plaintiff alleges that this is not the first time a dog has bitten someone in the unit. Plaintiff claims that he was denied medical attention for almost half an hour. Nurse Nathan Moser then cleaned the puncture wounds and cuts and issued medication and bandages, with orders that the bandages be changed daily.

Plaintiff informed Defendant Hubble about the attack promptly after it happened, and the incident report was reviewed by Defendant Bauman. On October 1, 2018, Plaintiff filed

2

at least one grievance about the disregard of MDOC Policy Directive 03.03.130. Unknown Prunick (not a Defendant) reviewed the grievance and found no policy violation. The finding was supported by Defendant Naeyaert.

On October 16, 2018, Plaintiff was transferred to LRF, apparently on an emergency basis. Plaintiff alleges that the transfer was done in retaliation for Plaintiff's grievance. Plaintiff received his property on October 19, 2018. Before his transfer, Plaintiff requested Step-II grievance appeal forms. Plaintiff alleges that his grievance appeal forms were delayed until November 14, 2018. Plaintiff completed the appeal forms and mailed them to LMF on November 16, 2018. Plaintiff contends that several of his grievances have been appealed through Step III.

Finally, Plaintiff contends that, over the course of the ten months between his transfer and the filing of his complaint, unspecified staff members have engaged in a campaign of harassment, ostensibly interfering with Plaintiff's rights under the First, Fifth, and Fourteenth Amendments. Specifically, Plaintiff alleges that staff members have issued misconduct tickets against him, upgraded his security level, and moved him to a different facility, all in an attempt to interfere with Plaintiff's pursuit of his right to complain of the alleged Eighth Amendment violation arising out of the unsafe conditions of confinement in the dog unit.

Plaintiff seeks declaratory relief, together with a preliminary and permanent injunction requiring Defendant Bauman to close the AMF dog shelter program. He also seeks compensatory and punitive damages.

**II.   Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Bauman and Mercier, other than his claim that they failed to supervise their subordinates and either interfered with the grievance process or failed to adequately respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Bauman or Mercier engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Moreover, even assuming that Plaintiff intended to allege that Defendants Bauman and Mercier interfered with the processing of Plaintiff's grievances, he fails to state a claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128

F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Plaintiff's right to petition government is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). By delaying or otherwise interfering with Plaintiff's grievance process, Defendants could not have barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an

access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, even assuming that Plaintiff intended to claim that Defendants Bauman and Mercier interfered with Plaintiff's grievance process, he would fail to state a claim against them.

For all these reasons, Plaintiff fails to state a claim against Defendants Bauman and Mercier.

## IV. Eighth Amendment

Plaintiff alleges that Defendant Hubble, by failing to take Plaintiff's fears of the LMF dogs seriously, was deliberately indifferent to a substantial risk to Plaintiff of serious physical injury.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial

7

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766.

Here, Plaintiff alleges no more than that he made Defendant Mercier aware of his fear of being in a housing unit with dogs. Although Plaintiff may have been afraid of dogs, he

8

alleges no facts suggesting that Defendant Mercier knew or should have known that Plaintiff faced a substantial risk of harm from the dogs, which were present in the unit as part of a rehabilitative program. The fact that a dog subsequently bit Plaintiff, validating Plaintiff's fear, does not demonstrate that Defendant Mercier was deliberately indifferent to a substantial risk that a dog was likely to bite Plaintiff. Plaintiff's allegations suggest, at best, that Defendant Mercier may have been negligent. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

## V. Retaliation

Plaintiff alleges that he was transferred from LMF to LRF in retaliation for his filing grievances about the dog bite and violations of policy. Plaintiff suggests, but does not affirmatively allege, that Defendant Naeyaert, who was a member of the SCC, was responsible for his transfer.[1] Plaintiff also conclusorily alleges that he has been subjected to a retaliatory "campaign of harassment" (ECF No. 1-1, PageID.46), including the issuance of unspecified misconduct charges and an increase to his security classification. Finally, in one of his grievances, Plaintiff alleges that Defendant Hubble, acting with a retaliatory motive, failed to give him a copy of the incident report, instead requiring Plaintiff to seek a copy from health services.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

---

[1] For the reasons earlier discussed, to the extent that Plaintiff alleges that Defendant Naeyaert is liable solely on the basis of Naeyaert's response to his grievance, he fails to allege active conduct that would impose liability on Defendant Naeyaert. *Shehee*, 199 F.3d at 300.

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court therefore assumes that Plaintiff has met the first prong of the retaliation standard.

Plaintiff, however, fails to allege that Defendant Naeyaert took adverse action against him. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

"Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to

engage in the protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff alleges nothing more than that he was transferred to a different facility after he was bitten by a dog while housed in a unit from which he alleges that he sought transfer. In fact, Plaintiff admitted in his grievance that he was being transferred to a different facility because he was experiencing panic attacks and anxiety about remaining in a dog unit. (*See* Grievance No. LMF-1810-4325-21C, ECF No. 1-1, PageID.25.) A grievance response signed by Defendant Naeyaert indicated that LMF had no Level-II units without dogs, so Plaintiff was transferred from Level-II housing at LMF (which houses prisoners in Levels II and IV) to Level-IV housing at LRF (which houses prisoners in Levels I, II, and IV) "until an alternate Level II transfer [could] be accommodated." (*Id.*)

Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer.

11

Further, even if Plaintiff had alleged adverse action, his complaint is devoid of allegations that Defendant Naeyaert's participation in the decision to transfer Plaintiff had a retaliatory motive. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Naeyaert retaliated against him because he filed grievances about Defendant Hubble. Indeed, by his own admission in Grievance No. LMF-1810-4325-21C, Plaintiff knew that he was being transferred on an emergency basis because of his panic attacks related to remaining in the dog unit. Under these circumstances, speculative allegation about Defendant Naeyaert's participation in the transfer decision fails to meet the plausibility standard for stating a claim, as it suggests nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

To the extent that Plaintiff alleges that Defendant Hubble acted with a retaliatory motive when she did not give Plaintiff a copy of the incident report, Plaintiff fails to allege adverse

12

action. The failure to provide a copy of an incident form is not conduct that is "capable of deterring a person of ordinary firmness" from filing a grievance. *Bell*, 308 F.3d at 606. That is particularly true where, as here, the prisoner was instructed to ask health services for a copy and he did so. As a consequence, Plaintiff's arguable retaliation claim against Defendant Hubble fails to state a claim.

Finally, to the extent that Plaintiff complains that retaliatory actions were taken against him after his transfer to LRF, he fails to allege facts supporting a claim against any Defendant in this action. It is a basic pleading essential that a plaintiff attribute factual allegations to particular named defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Plaintiff alleges no facts suggesting that any LMF Defendant is responsible for misconduct charges or other harassment that occurred at LRF.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should

Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: November 13, 2019 /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE